**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KALPESH VAKIL, | |
| Plaintiff, | Civil Action No. 24-7077 (MAS) (RLS) |
| v. | **MEMORANDUM OPINION** |
| GREENWALD CATERERS, INC., *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Greenwald Caterers, Inc. (the "Company") and Isaac Greenwald's ("Greenwald," and collectively with the Company, "Defendants") Motion to Dismiss (ECF No. 23) Plaintiff-Relator Kalpesh Vakil's ("Relator") *qui tam* Complaint (ECF No. 1) filed on behalf of the United States of America ("United States" or the "Government"). Relator opposed (ECF No. 25) and Defendants replied (ECF No. 26). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion to Dismiss is granted.

## I.    <u>BACKGROUND</u>[1]

### A.    The Parties

Relator, an individual, brings this action in his private capacity under the False Claims Act (the "FCA"), 31 U.S.C. § 3729, *et seq.* (Compl. ¶¶ 1, 5, ECF No. 1.) The Company is a New Jersey catering company located in Lakewood, New Jersey. (*Id.* ¶ 3.) Greenwald started the Company around 1993, and at all times has exercised "sole and exclusive control" over the Company. (*Id.* ¶¶ 4, 34.) This action arises out of Relator's assertion that Defendants "engaged in a scheme to defraud the United States of over $4.7 million [dollars]." (*Id.* ¶ 2.)

### B.    The Restaurant Revitalization Fund

The American Rescue Plan Act (the "ARPA") established the Restaurant Revitalization Fund (the "RRF") "as a source of grant funds for restaurants, bars, and similar establishments" in response to the COVID-19 pandemic. (*Id.* (citing 15 U.S.C. § 9001, *et seq.*).) The ARPA authorizes recipients to use RRF grant funds to cover certain business expenses incurred during the COVID-19 pandemic "for payroll, mortgage . . . and/or rent payments . . . , utility costs, expenses incurred maintaining outdoor dining areas, supplies, certain food and beverage costs, supplier costs, operational expenses, paid sick leave, and any other expense the [Small Business

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true and considers the factual allegations in the Complaint, exhibits attached to the Complaint, and public documents cited throughout the Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *see also Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the court can "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents" on a Rule 12(b)(6) motion (citation omitted)).

Administration (the 'SBA')] deems essential to sustaining the grant recipient's business operations." (*Id.* ¶ 19 (citing 15 U.S.C. § 9009c(c)(5)).)

In establishing the RRF, Congress provided for "prioritiz[ing] awarding grants to eligible entities that are small business concerns owned and controlled by women . . . ." (*Id.* ¶ 13 (emphasis omitted) (quoting 15 U.S.C. § 9009c(c)(3)(A)).) To be considered a privately-owned small business concern that is "owned and controlled by women," the following conditions must be satisfied: (1) at least 51% ownership by one or more women; and (2) "the management and daily business operations of the business [must be] controlled by one or more women." (*Id.* ¶ 14 (emphasis omitted) (quoting 15 U.S.C. § 632(n)).) Pursuant to the authority granted under 15 U.S.C. § 632(a)(2), the SBA "adopted a regulation providing, in relevant part, that a catering business is 'small' if it has less than $9 million in annual receipts." (*Id.* ¶ 16 (citing 13 C.F.R. § 121.201).)

The RRF application window opened on May 3, 2021. (*Id.* ¶ 59.) For the initial 21-day application window, grants would only be awarded to those applicants who met the "small business concern at least 51 percent owned and controlled by women" criteria. (*Id.* ¶ 60.) "Absent being given priority, grants were awarded on a first come, first serve basis." (*Id.* ¶ 60 n.21 (citing 15 U.S.C. § 9009c(c)(1)).)

**C.      Defendants' RRF Grant**

On behalf of the Company, Greenwald filed, or directed someone to file, an application for an RRF grant near the beginning of the application window, which was approved in the amount of $4,740,740 on May 27, 2021. (*Id.* ¶¶ 24, 27-28, 56, 61.) As part of the Company's application for the grant, it "was prompted, if applicable, to designate itself as a 'small business concern at least 51 percent owned and controlled by one or more women'" and had to certify that the Company

was eligible for priority based on these qualifiers. (*Id.* ¶¶ 30-31.) With its application, the Company "was required to submit 'documentation of gross receipts for 2019 and 2020.'" (*Id.* ¶ 39.) Additionally, the Company had to certify that it would use grant funds for eligible purposes under the ARPA. (*Id.* ¶ 64 (citing 15 U.S.C. § 9909c(c)(5)).)

The SBA noted in publicly-available material regarding the Company's RRF grant that the Company was a "small business concern owned and controlled by women[.]" (*Id.* ¶ 26.) As such, according to Relator, "[the Company's] grant application was given special priority." (*Id.* ¶ 27 (citation omitted).) According to Relator, however, Greenwald is on record testifying that he has always controlled the Company and that the Company "generated more than $11 million in gross receipts for 2019." (*See id.* ¶¶ 35-37, 41.)

After the Company received the grant, Relator alleges that Greenwald "redirected RRF grant funds to finance the acquisition of real estate through special purpose entities that he owns." (*Id.* ¶ 48.) Relator's allegations are based on Greenwald's prior testimony about: (1) his ownership of two commercial real estate companies; and (2) the fact that the Company loaned approximately $3 million to those commercial real estate companies in 2021. (*Id.* ¶¶ 49-53.) Relator further alleges that "[i]nexplicably, [the Company], purportedly struggling due to the COVID[-19] pandemic and trying to rebuild after a massive fire [in September 2020], magically came up with over $3 million in extra liquidity in the exact same time frame during which it received the RRF grant under the falsified application it submitted to the SBA." (*Id.* ¶¶ 54-55.)

Based on these facts, Relator alleges that Defendants submitted a "fraudulent RRF application and subsequent[ly] misappropriat[ed] . . . RRF grant funds." (*Id.* ¶ 23.) Specifically, Relator contends that:

> at . . . Greenwald's direction and under his supervision, [the Company: (1)] falsely certified it was "owned and controlled by

women"[; (2)] falsely certified it was a "small business concern"[; (3)] falsely certified it needed a grant from the RRF to support ongoing operations[; (4)] falsely certified it would only use grant funds for eligible uses under ARPA[;] but instead [(5)] diverted grant funds that [the Company] received from the RRF to finance investments that personally benefit[ted] . . . Greenwald.

(*Id.* ¶ 21.)

### D.    Procedural Background

On June 18, 2024, Relator filed the Complaint under seal, which alleges two causes of action: (1) violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), (B) for making a false claim asserted against both Defendants ("Count One"); and (2) violation of the FCA, 31 U.S.C. § 3729(a)(1)(C) for conspiracy asserted against Greenwald ("Count Two"). (*See* Compl. ¶¶ 68-104.) On May 2, 2025, the Government filed a Notice of Election to Decline Intervention. (Gov't's Notice, ECF No. 5.) On August 26, 2025, Defendants filed the instant motion to dismiss. (Defs.' Mot. to Dismiss, ECF No. 23.) Relator opposed (Relator's Opp'n Br., ECF No. 25) and Defendants replied (Defs.' Reply Br., ECF No. 26).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure[2] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

(2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   <u>DISCUSSION</u>

Defendants argue that Relator's *qui tam* Complaint should be dismissed for three primary reasons: (1) Count One should be dismissed because the alleged false statements are not material; (2) Relator fails to satisfy Rule 9(b)'s heightened pleading standard; and (3) Count Two should be dismissed for failure to state an underlying FCA claim and adequately plead the elements of a conspiracy. (*See generally* Defs.' Moving Br., ECF No. 23-1.) The Court first turns to Count One asserted against both Defendants.

### A.   **Count One**

Under the FCA, it is "unlawful to knowingly submit a fraudulent claim to the [G]overnment." *United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 840 (3d Cir. 2014) (citations omitted). As is relevant here, individuals are liable under the FCA if they

"knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval" or "knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1)(A)-(B). "The *qui tam* provision of the [FCA] permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government." *Schumann*, 769 F.3d at 840 (alteration in original) (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)). Such claims under the FCA require four elements: (1) falsity; (2) causation; (3) knowledge; and (4) materiality. *United States ex rel. Schieber v. Holy Redeemer Healthcare Sys., Inc.*, No. 19-12675, 2024 WL 1928357, at *4 (D.N.J. Apr. 30, 2024) (citing *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017)). "An actionable claim can be factually or legally false[,]" where a factual falsity occurs when a claimant makes a factual misrepresentation related to its goods or services and a legal falsity occurs when a claimant makes an express or implied certification of its compliance with regulations that are prerequisites to receiving payment from the Government. *United States ex rel. Bennett v. Bayer Corp.*, No. 17-4188, 2022 WL 970219, at *6 (D.N.J. Mar. 31, 2022) (citation omitted). The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "The FCA's materiality requirement is demanding" and, as such, "[m]ateriality . . . cannot be found where noncompliance is minor or insubstantial." *Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 589 U.S. 176, 178 (2016). A complaint, therefore, does not meet the "high standard" of adequately pleading materiality of false statements where "there are no factual allegations showing that [the Government] would not have" awarded the grant money "had the[] . . . deficiencies been cured." *Petratos*, 855 F.3d at 490.

7

Defendants argue in part that Relator has failed to state a claim against Defendants for violation of the FCA by making false statements to the Government because Relator has failed to adequately allege that the statements were false or that any purported false statement was material. (*See* Defs.' Moving Br. 11-17, 21-28.) Relator argues in opposition that he has adequately alleged that Defendants made three false statements that were material to the Company's RRF grant approval, namely: (1) the Company is controlled by women; (2) the Company is a small business concern; and (3) the Company would use the funds to "fund operations" for "eligible purposes." (Relator's Opp'n Br. 10-15, 30-37.) The Court finds that Count One should be dismissed because Relator has not adequately alleged that the statements are false and/or material.

### 1.    *Falsity*

First, the Court finds that Relator has not adequately alleged that the statements regarding the Company being a "small business concern" and that the Company would use the funds to "fund operations" for "eligible purposes" are false.[3] An FCA complaint, including allegations related to any fraudulent or false statements, must meet Rule 9(b)'s heightened pleading standard. *United States v. Neary*, No. 20-14167, 2021 WL 3732910, at *6 (D.N.J. Aug. 24, 2021).

Here, in alleging that Defendants' statement that the Company is a "small business concern" is false, Relator alleges that: (1) "[the Company] was required to submit 'documentation of gross receipts for 2019 and 2020'" (Compl. ¶ 39); (2) "[p]resumably, the RRF application required submission of that documentation so the SBA could verify [the Company] was under the $9 million annual revenue threshold for purposes of qualifying as a 'small business concern' under

---

[3] The Court notes that Defendants argue that Relator is improperly using information from a separate, unrelated case, that was subject to a confidentiality order in bringing the present allegations against Defendants. (*See* Defs.' Moving Br. 7-9.) The Court finds this potential misuse of information troubling but need not decide the Motion to Dismiss on that basis.

8

ARPA" (*id.*¶ 40); (3) "Greenwald testified that [the Company] generated more than $11 million in gross receipts for 2019" (*id.* ¶ 41); and (4) "[s]eeing as the SBA classified [the Company] as a 'small business concern' in awarding the RRF grant, upon information and belief, [the Company] submitted falsified revenue documentation with its RRF application" (*id.* ¶ 42). Relator's allegation that the statement that the Company is a "small business concern" was false is speculative at best considering that the allegation rests purely on testimony that for a single year (2019), the Company's revenue was $11 million. (*See, e.g., id.* ¶¶ 39-41.) Relator's own opposition brief acknowledges that a single-year's revenue is not the appropriate measure for this metric. (*See* Relator's Opp'n Br. 22 (attempting to calculate and acknowledging that the Company would need to meet the "three-year gross receipts average[4] from 2018 through 2020 below the $8,000,000 threshold under 13 C.F.R. § 121.201").)

Relator's allegation that Defendants' statement that the Company would use the funds to "fund operations" and for "eligible purposes" is false likewise falls short. Relator's allegations that this statement is false lie on: (1) Greenwald's testimony that the Company lent money to two of Greenwald's real estate companies; (2) the fact that the Company was able to "generate that type of liquidity" for the loans was "remarkable" given that the Company was allegedly recovering from a fire in September 2020; and (3) "[i]nexplicably" the Company was able to loan around $3 million "in the exact same time frame during which it received the RRF grant under the falsified application it submitted to the SBA." (Compl. ¶¶ 51-55.) The purported falsity of the statement regarding the fund usage, however, is no more than mere conjecture that is not tied to any

---

[4] Defendants argue that the proper metric is a three-year and a five-year average in any event. (*See* Defs.' Reply Br. 8-10.) Regardless of whether the appropriate measure is a three-year or five-year average, the Court finds that Relator's Complaint fails to adequately allege facts regarding the purported falsity that the Company is a "small business concern" because Relator's allegation is founded only on testimony related to revenue from 2019. (*See* Compl. ¶¶ 39-41.)

underlying factual allegations. Such allegations are insufficient. *See, e.g., United States v. Eastwick Coll.*, 657 F. App'x 89, 95 (3d Cir. 2016) (finding district court properly dismissed FCA claim where the "allegations as to [the claim] amount to nothing more than speculation" because "plaintiffs must make 'factual allegations that make their theoretically viable claim plausible'" to adequately plead a claim for relief (citation omitted)); *Hericks v. Lincare Inc.*, No. 07-387, 2014 WL 1225660, at *9 (E.D. Pa. Mar. 25, 2014) (finding allegations "rooted in conjecture, speculation, or supposition" insufficient to adequately plead the "who, what, and where" required under Rule 9(b)'s heightened pleading standard); *United States ex rel. Scheer v. Beebe Healthcare*, No. 20-6117, 2024 WL 219395, at *8 (E.D. Pa. Jan. 18, 2024) (dismissing FCA claims where allegations were "based on suspicion and conjecture" where relator "speculate[d] that 'there was no way' to automatically [perform certain activities] without committing fraud" but did not otherwise allege facts to support the "conclusory allegation").

Without more facts to support his conclusory allegations, the Court finds that Relator has failed to satisfy the heightened Rule 9(b) standard in alleging the falsity of the statements in the Company's RRF grant application. *See Bennett*, 2022 WL 970219, at *8 (noting that to satisfy Rule 9(b), "a relator . . . must 'support its allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story–that is, the who, what, when, where, and how of the events at issue"'" (quoting *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016))); *United States ex rel. Zwirn v. ADT Sec. Servs., Inc.*, No. 10-2639, 2014 WL 2932846, at *11 (D.N.J. June 30, 2014) (finding relator failed to adequately plead facts regarding the falsity of statements "with the particularity required by [Rule] 9(b)" where "the allegations [were] not sufficiently supported by pleaded facts to be plausible").

10

### 2.    *Materiality*

Second, even assuming Relator had adequately pled that the statements made in the Company's RRF application were false, Relator has failed to adequately plead that the false statements were material to the Company's RRF grant approval. In the Complaint, Relator alleges that: (1) the Company submitted an RRF application (Compl. ¶ 71); (2) to be eligible for priority, the Company had to "designate itself as a 'small business concern at least 51 percent owned and controlled by one or more women'" and acknowledge the penalties for false statements on the RRF application (*id.* ¶ 80); (3) the Company did "falsely represent[] itself in its RRF application as a 'small business concern owned and controlled by women' to obtain priority that resulted in [the Company] being awarded one of the largest RRF grants in the country a mere 24 days after the application was filed" (*id.* ¶ 72); (4) the Company "certified in its RRF application that it would only use grant funds for eligible uses," but ultimately used the funds to "finance the acquisitions of real estate" (*id.* ¶ 74); and (5) "[a]bsent those false certifications, [the Company] would not have received a penny – let alone a \$4.7+ million priority grant within 24 days after filing its RRF application" (*id.* ¶ 84).

Relator has not adequately alleged that Defendants' application statement that the Company is "a 'small business concern at least 51 percent owned and controlled by one or more women'" (*id.* ¶ 80) was material to the approval of the Company's RRF grant. In fact, as Relator recognizes: (1) the Company's RRF grant was awarded *after* the priority period ended (*id.* ¶¶ 24, 59-61); (2) despite the Company filing its application for a grant at the beginning of the application period (*id.* ¶¶ 59-61); and (3) that "[a]bsent being given priority, grants were awarded on a first come, first serve basis." (*Id.* ¶ 60 n.21 (citing 15 U.S.C. § 9009c(c)(1))). Therefore, while the two requirements of being a "small business concern" and being "at least 51 percent owned and

11

controlled by one or more women" may have been the only way to establish eligibility for *priority review* of the Company's RRF application, Relator does not allege that these criteria were required to receive a grant on a non-priority basis. (*See generally* Compl.); *see also* 15 U.S.C. § 9009c(a)(4) (defining "eligible entity"). Moreover, Relator even acknowledges that the Company did not receive the grant award during the priority period. (*See* Compl. ¶ 24.) Without more, Relator has failed to allege that the Government would not have awarded the grant money at all but for the purported misrepresentation that the Company was a "small business concern at least 51 percent owned and controlled by one or more women." (*See* Compl. ¶ 80); *Petratos*, 855 F.3d at 490.

Similarly, even if Defendants' statement that the Company would use the funds to "fund operations" and for "eligible purposes" was false, Relator has failed to adequately plead the materiality of that statement. Notably, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 579 U.S. at 194. "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Here, beyond stating that had the Company not certified that "it would use all grant funds received from the RRF for eligible purposes . . . [the Company] would not have received a penny" (Compl. ¶ 64), Relator fails to adequately allege facts to establish that but for those certifications, the Government would not have awarded the Company the RRF grant. Such a conclusory statement is insufficient to adequately plead materiality. *See Petratos*, 855 F.3d at 490.

The Court, therefore, finds that Relator has failed to adequately plead falsity and/or materiality of the purportedly false statements.[5] Count One is, accordingly, dismissed.

**B.      Count Two**

Defendants next argue that Relator failed to allege a claim for conspiracy to make false statements against Greenwald because there is no underlying FCA violation and because the Complaint fails to allege an "agreement between [] Greenwald and anyone other than the company he controls[,]" which is required to plead a conspiracy claim. (Defs.' Moving Br. 30-36.) The Court agrees with Defendants that Count Two should be dismissed.

"To state a conspiracy claim under the FCA, a relator must allege[:] (1) 'a conspiracy to get a false or fraudulent claim allowed or paid'[;] and (2) 'an act in furtherance of the conspiracy.'" *Schieber*, 2024 WL 1928357, at *7 (quoting *United States ex rel. Greenfield v. Medco Health Sys., Inc.*, No. 12-522, 2014 WL 4798637, at *11 (D.N.J. Sep. 26, 2014)). "Importantly, an agreement between two or more persons is the 'essence' of a conspiracy under the FCA." *United States ex rel. Laporte v. Premier Educ. Grp., L.P.*, No. 11-3523, 2016 WL 2747195, at *19 (D.N.J. May 11, 2016).

Here, Relator has failed to allege the existence of any agreement between Greenwald and another individual or entity to defraud the Government. (*See generally* Compl.) In opposition to Defendants' motion, Relator argues that "Relator has pled facts that, if proven, would establish [] Greenwald engaged in the conspiracy in his personal capacity for his personal benefit" which is sufficient. (*See* Relator's Opp'n Br. 37-40.) This argument overlooks the fact that Relator has

---

[5] Because the Court finds that Relator has failed to adequately allege falsity and/or materiality, it need not reach the causation or knowledge elements of the FCA claim or Defendants' other arguments in favor of dismissal.

failed to allege any facts regarding any agreement underlying the purported conspiracy.[6] *See Laporte*, 2016 WL 2747195, at *19 (dismissing conspiracy claim where the complaint failed to allege an agreement and "the facts [did] not allow the [c]ourt to infer an agreement between the two because [r]elators have effectively pled that [the companies] are the same entity for all intents and purposes"). Without more, Relator fails to sufficiently plead a conspiracy claim under the FCA.

The Court, accordingly, dismisses Count Two.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Relator's Complaint is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: _____3/3_____, 2026

---

[6] Without any allegations of the existence of an agreement, the Court need not reach the parties' arguments regarding whether Greenwald, as the sole agent of the Company, can conspire with the Company under the intracorporate conspiracy doctrine. *See Gen Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (Under the intracorporate conspiracy theory, "an entity cannot conspire with one who acts as its agent." (citation omitted)).

14