**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KALPESH VAKIL,<br><br>Plaintiff,<br><br>v.<br><br>GREENWALD CATERERS, INC., *et al.*,<br><br>Defendants. | Civil Action No. 24-7077 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Greenwald Caterers, Inc. (the "Company") and Isaac Greenwald's ("Greenwald," and collectively with the Company, "Defendants") Motion to Dismiss (ECF No. 34) Plaintiff-Relator Kalpesh Vakil's ("Relator") *qui tam* Amended Complaint (ECF No. 29) filed on behalf of the United States of America ("United States" or the "Government"). Relator opposed (ECF No. 40), and Defendants replied (ECF No. 41). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion to Dismiss is granted.

# I. BACKGROUND[1]

## A. The Parties

Relator, an individual, brings this action in his private capacity under the False Claims Act (the "FCA"), 31 U.S.C. § 3729, *et seq.* (Am. Compl. ¶¶ 1, 5, ECF No. 29.) The Company is a New Jersey catering company located in Lakewood, New Jersey. (*See id.* ¶ 3.) Greenwald has at all times exercised "sole and exclusive control" over the Company. (*Id.* ¶ 4.) This action arises out of Relator's assertion that Defendants engaged in "a brazen scheme . . . to defraud the United States of over $4.7 million [dollars]." (*Id.* ¶ 2.)

## B. The Restaurant Revitalization Fund

The American Rescue Plan Act (the "ARPA") established the Restaurant Revitalization Fund (the "RRF") "as a source of grant funds for restaurants, bars, and similar establishments" in response to the COVID-19 pandemic. (*Id.* ¶ 12 (citing 15 U.S.C. § 9001, *et seq.*).) The ARPA authorizes recipients to use RRF grant funds to cover certain business expenses incurred during the COVID-19 pandemic "for payroll, mortgage . . . and/or rent payments . . . , utility costs, expenses incurred maintaining outdoor dining areas, supplies, certain food and beverage costs, supplier costs, operational expenses, paid sick leave, and any other expense the [Small Business

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true and considers the factual allegations in the Amended Complaint, exhibits attached to the Amended Complaint, and public documents cited throughout the Amended Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *see also Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the court can "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents" on a Rule 12(b)(6) motion (citation omitted)).

Administration (the 'SBA')] deems essential to sustaining the grant recipient's business operations." (*Id.* ¶ 18 (citing 15 U.S.C. § 9009c(c)(5)).)

In establishing the RRF, Congress provided for the "prioritiz[ation] of awarding grants to eligible entities that are small business concerns owned and controlled by women." (*Id.* ¶ 21 (quoting 15 U.S.C. § 9009c(c)(3)(A)).) To be considered a privately-owned small business concern that is "owned and controlled by women," the following conditions must be satisfied: (1) there must be at least 51% ownership by one or more women; and (2) "the management and daily business operations of the business [must be] controlled by one or more women." (*Id.* ¶ 24 (quoting 15 U.S.C. § 632(n)).) "[T]he governing SBA regulation provided that a catering business was 'small' if it had less than $8 million in annual receipts." (*Id.* ¶ 23 (citing 13 C.F.R. § 121.201).)

The RRF application window opened on May 3, 2021. (*Id.* ¶ 79.) For the initial 21-day application window, grants would only be awarded to those applicants who "self-certified" that they met the criteria of being a "small business concern at least 51 percent owned and controlled by women." (*Id.* ¶ 80.) "Absent being given priority, grants were awarded on a first come, first serve basis." (*Id.* ¶ 80 n.28 (citing 15 U.S.C. § 9009c(c)(1)).)

**C. Defendants' RRF Grant**

As the "individual with sole and exclusive control over [the Company]," Greenwald filed or caused someone to file an application for an RRF grant "almost immediately after the application window opened," which was approved in the amount of $4,740,740 on May 27, 2021. (*Id.* ¶¶ 28, 81-82, 101.) "To qualify for an RRF grant on any basis, let alone a priority basis," the Company was required to: (1) "designate itself as a 'small business concern at least 51 percent owned and controlled by one or more women' by checking a box"; (2) "certify that designation by

separate initialing"; and (3) "certify by separate initialing that any false statements or certifications in that regard could result in criminal prosecution." (*Id.* ¶¶ 25, 135.) With its application, the Company was required to submit "documentation of gross receipts for 2019 and 2020." (Ex. 3 to Am. Compl. 16, ECF No. 29-1 (emphasis omitted).) Additionally, the Company "was statutorily required" to certify that it "had [a] pandemic-related financial need for the grant and that grant funds would only be used for eligible purposes under [the] ARPA. (Am. Compl. ¶ 39 (citing 15 U.S.C. § 9009c(c)(2)(A)(i)).)

The SBA noted—in publicly-available material regarding the Company's RRF grant—that the Company was a "small business concern owned and controlled by women." (*Id.* ¶ 77.) As such, according to Relator, "it appears [the Company's] grant application was given special priority." (*Id.* ¶ 78 (citation omitted).) Both Greenwald and his wife, however, are on record testifying that Greenwald has always controlled the Company and that his wife has no knowledge of or involvement with running the Company. (*See id.* ¶¶ 93-96.) Greenwald has also testified on the record that the Company's gross receipts were $9,239,744 in 2017 and $11,398,259 in 2018. (*See id.* ¶¶ 86-87.) Greenwald's testimony further stated that in 2019, the Company's gross receipts were $11,873,099, and in 2020, the Company's "ordinary business income alone was $5.834 million." (*Id.* ¶¶ 88-89.) According to Relator, the 2020 ordinary business income figure "mean[s] that [the Company's] gross receipts had to have been at least $5.834 million." (*Id.* ¶ 89.)

Relator alleges that, after the Company received the grant, Greenwald "redirected millions in RRF grant funds to finance the acquisition of real estate through two special purpose entities that [Greenwald] owns." (*Id.* ¶ 47.) Relator's allegations are based on Greenwald's prior testimony about: (1) his ownership of two commercial real estate companies; and (2) the fact that the Company loaned approximately $3 million to those commercial real estate companies in 2021.

(*Id.* ¶¶ 48-50.) Relator further alleges that "while [the Company] was in dire financial condition at the time it received an RRF grant (albeit, a condition that had nothing to do with the pandemic), it somehow generated enough liquidity in the immediate aftermath of receiving the $4.7+ million RRF grant to finance $3+ million in loans to . . . Greenwald's real estate investment companies." (*Id.* ¶ 52.) According to Relator, because Greenwald "has been in exclusive control of [the Company] since it was organized, [Greenwald's] implausible inability (or refusal) to explain how his business . . . was suddenly able to generate" its liquidity "is compelling evidence of, and leads to the more than plausible conclusion that, [the Company] generated the liquidity from only one source: RRF grant funds." (*Id.* ¶ 55.)

Based on these facts, Relator alleges that Defendants submitted a "fraudulent RRF application and subsequent[ly] misappropriat[ed] . . . RRF grant funds." (*Id.* ¶ 36.) Specifically, Relator contends that:

> at . . . Greenwald's direction and under his supervision, [the Company]: induced the SBA into awarding the $4.7+ million RRF grant by falsely certifying: [(1)] it "needed an RRF grant to support catering operations"[; (2)] it would only use RRF grant funds for eligible uses under ARPA [; (3)] it was a "small business concern" [; (4)] it was "owned and controlled by women" [; and (5)] that the information in its RRF grant application was truthful and accurate in all material respects.

(*Id.* ¶ 32.)

### D. Procedural Background

On June 18, 2024, Relator filed the initial Complaint under seal, which alleges two causes of action: (1) violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), (B) for making a false claim asserted against both Defendants ("Count One"); and (2) violation of the FCA, 31 U.S.C. § 3729(a)(1)(C) for conspiracy asserted against Greenwald ("Count Two"). (*See* Compl. ¶¶ 68-104, ECF No. 1.) On May 2, 2025, the Government filed a Notice of Election to Decline

Intervention. (Gov't's Notice, ECF No. 5.) On August 26, 2025, Defendants moved to dismiss the initial Complaint. (Defs.' Mot. to Dismiss, ECF No. 23.) On March 3, 2026, this Court dismissed the Complaint in its entirety and provided Plaintiff forty-five days to file an amended complaint. (Mar. 2026, Mem. Op., ECF No. 27; Mar. 2026, Order, ECF No. 28.) On April 17, 2026, Relator filed an Amended Complaint, reasserting the two causes of action in the initial Complaint. (Am. Compl., ECF No. 29.) On June 15, 2026, Defendants moved to dismiss. (Defs.' Moving Br., ECF No. 34-1.) Relator opposed on August 7, 2026 (Relator's Opp'n to Mot. to Dismiss, ECF No. 40), and Defendants replied on August 28, 2026 (Defs.' Reply Br. To Mot. to Dismiss, ECF No. 41).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure[2] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

Defendants again move to dismiss both counts of Relator's *qui tam* action, asserting that "the Amended Complaint suffers from the same flaws as the original [Complaint]: it does not sufficiently allege falsity or materiality and fails to meet the stringent pleading requirements of Rule 9(b)." (Defs.' Moving Br. 3.) "Without a substantive FCA claim [in Count One]," Defendants assert that "[Relator's] FCA conspiracy claim [in Count Two] must also fail." (*Id.* at 8.) The Court addresses each Count in turn.

### A. Count One

Individuals are liable under the FCA if they "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval" or "knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). To state a claim under the FCA, four elements are necessary: (1) falsity; (2) causation; (3) knowledge; and (4) materiality. *United States ex rel. Schieber v. Holy Redeemer Healthcare Sys., Inc.*, No. 19-12675, 2024 WL 1928357, at *4 (D.N.J. Apr. 30, 2024) (citing *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017)). "An actionable claim can be factually or legally false[.]" *United States ex rel. Bennett v. Bayer Corp.*,

No. 17-4188, 2022 WL 970219, at *6 (D.N.J. Mar. 31, 2022) (citation omitted). A factual falsity occurs when a claimant makes a factual misrepresentation related to its goods or services and a legal falsity occurs when a claimant makes an express or implied certification of its compliance with regulations that are prerequisites to receiving payment from the Government. *Id.*

Defendants argue, in part, that Relator's Amended Complaint fails to state claim because Relator "has not sufficiently alleged that Defendants knowingly falsely stated that [the Company]: (1) would use the RRF funds for proper purposes; (2) needed the funds; and (3) was a small business concern." (Defs.' Moving Br. 8.) Relator counters that "falsity is a given in this case" (Relator's Opp'n Br. 14 (citation modified)), namely because in addition to the false statements regarding fund use, need, and business size, Defendants also falsely represented that the Company "was a woman 'owned and controlled' business entitled to priority under 15 U.S.C. § 9009c(c)(3)" and that its "statements in the RRF application were true and accurate in all respects." (*Id.* at 14-15.) Because the parties' arguments implicate falsity and materiality, the Court addresses those elements in turn.

***1. Falsity***

Allegations related to any fraudulent or false statements in an FCA complaint must meet Rule 9(b)'s heightened pleading standard. *United States v. Neary*, No. 20-14167, 2021 WL 3732910, at *6 (D.N.J. Aug. 24, 2021). As explained below, the Amended Complaint reasserts and repackages many of the speculative and conclusory allegations regarding falsity that this Court previously rejected. (*See generally*, Am. Compl.) To the extent that the Amended Complaint

includes "new" falsity allegations, the Court finds these allegations suffer from the same deficiencies observed in the March Memorandum Opinion.[3] (*See generally* Mar. 2026, Mem. Op.)

Relator alleges that Defendants falsely certified that the Company needed RRF funds "to sustain its catering operations" and would use the funds for "purchasing food, supporting operations, making payroll, paying rent, purchasing supplies, and paying utilities." (Am Compl. ¶¶ 45, 47.) As before, Relator alleges that the certifications' falsity is supported by: (1) Greenwald's testimony that the Company lent over three million dollars to Greenwald's two real estate companies (*id.* ¶¶ 47, 49); and (2) the fact that the Company generated liquidity immediately after receiving the RRF funds (*id.* ¶ 52); and as before, this Court finds that these allegations are "no more than mere conjecture that [are] not tied to any underlying factual allegations" (Mar. 2026, Mem. Op. 9-10).

Relator also alleges that Defendants falsely certified that the Company was a "small business concern," falling "below the $8 million annual receipt threshold that was in effect under 13 C.F.R. § 121.201 when [the Company] applied for its RRF grant." (Am. Compl. ¶ 84.) This allegation is insufficient. As the Amended Complaint states, businesses that submitted certifications to the SBA prior to 2022 were permitted "to calculate annual receipts of affiliates using either the total receipts of the concern or affiliate or its most recently completed 5 fiscal years divided by 5, or the total receipts of the concern or affiliate over its most recently completed

[3] The Court notes that Defendants argue that Relator's Amended Complaint is improperly based on information from a separate, unrelated case that was subject to a confidentiality order. (*See* Defs.' Moving Br. 5-7.) The Court finds this potential misuse of information troubling but need not decide the Motion to Dismiss on that basis.

3 fiscal years divided by 3." (*Id.* ¶ 85 (citing 13 C.F.R. § 121.104(c)(1).)[4] Though the Amended Complaint alleges the Company's annual gross receipt amounts between 2017 and 2019 based on Greenwald's testimony (*id.* ¶¶ 86-88), to sufficiently plead that the Company was not "small" at the time it certified otherwise, the calculated three-year average of the Company's receipts must include the Company's 2020 annual receipt. The Amended Complaint, however, does not allege a figure for the 2020 annual receipt. (*See generally* Am. Compl.) Instead, it relies on Greenwald's testimony that the Company's "ordinary business income alone was $5.834" to speculate that "its gross receipts had to have been at least $5.834 million" (*id.* ¶ 89), and that it "would have been impossible for [the Company] to qualify as a 'small business concern'" (*id.* ¶ 90).

The Court again finds that Relator has failed to satisfy the heightened Rule 9(b) standard in alleging falsity of the statements made by the Company in its RRF grant application. *See Bennett*, 2022 WL 970219, at *8 (noting that to satisfy Rule 9(b), "a relator . . . must support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue" (citation modified)); *United States ex rel. Zwirn v. ADT Sec. Servs., Inc.*, No. 10-2639, 2014 WL 2932846, at *11 (D.N.J. June 30, 2014) (finding relator failed to adequately plead facts regarding

[4] Defendants argue that the proper metric is a three-year and a five-year average. (*See* Defs.' Moving Br. 17-19.) Regardless of whether the appropriate measure is a three-year or five-year average, the Court finds that Relator's Amended Complaint fails to adequately allege facts regarding the purported falsity that the Company is a "small business concern" because Relator's allegation is founded only on: (1) testimony related to annual receipts between 2017 and 2019; and (2) speculation regarding the 2020 receipt. (*See* Compl. ¶¶ 86-89.)

the falsity of statements "with the particularity required by [Rule] 9(b)" where "the allegations [were] not sufficiently supported by pleaded facts to be plausible").[5]

### 2. *Materiality*

Even if Relator had adequately pled that the Company made false certifications in its RRF application, the Court finds that Relator failed to adequately plead materiality. A false claim or representation is "material" under the FCA when it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "The FCA's materiality requirement is demanding" and, as such, "[m]ateriality . . . cannot be found where noncompliance is minor or insubstantial." *Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 178, 194 (2016). A complaint, therefore, does not meet the "high standard" of adequately pleading materiality of false statements where "there are no factual allegations showing that [the Government] would not have" awarded the grant money "had the[] . . . deficiencies been cured." *Petratos*, 855 F.3d at 490.

The Amended Complaint adds a new section titled "Truthful Factual Representations in RRF Applications About the Need and Intended Use for Grant Funds Were Material to the SBA's

[5] The Court notes that Relator's Opposition Brief only makes more conclusory arguments in response to Defendants' assertion that the Amended Complaint's falsity allegations fail to meet 9(b)'s heightened pleading standard. (*See, e.g.*, Relator's Opp'n Br. 16 (broadly stating that "there is little question the Defendants lied about [the Company] needing RRF funds to weather the pandemic" and "about [the Company] being a small business," and "there is no question [that] the Defendants lied about [the Company] being owned and controlled by women" and about the truth and accuracy of information in the RRF application); *see also id.* at 18 (asserting the Amended Complaint provides, as necessary to establish falsity, the who ("[t]he Defendants"), the what ("[f]ive separate lies—pandemic-related need, intended use, small business status, women-controlled business status, and false certification of overall truthfulness"); the when ("May of 2021"), the where ("Defendants' RRF application"); and the how ("[s]ubmission to the SBA on a priority basis" of Defendants' alleged misrepresentations (citing *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019))).)

Decisions," in which Relator cites the SBA's previous enforcement actions resulting from false RRF certifications in unrelated cases. (Am. Compl. 15 ¶¶ 58-76; *see also* Exs. 4-5 to Am. Compl. 16, ECF No. 29-1.) Relator alleges that the prior enforcement actions: (1) evidence "the critical reliance that the SBA placed on each applicant making truthful certifications in its RRF application about its pandemic-related need for RRF grant funds and its intended use for RRF grant funds" (Am. Compl. ¶ 70); (2) "establish[] that each applicant's certifications in those respects were material to the SBA's funding decisions" (*id.*); and (3) "confirm[] that, had [the Company] made accurate certifications and statements about its intended use for the RRF funds, the SBA would not have approved the application" (*id.* ¶ 76).

Beyond the facts that the cited enforcement actions are unrelated to the instant case and occurred years *after* the Company submitted its RRF certifications to the SBA (*see* Exs. 4-5 to Am. Compl. 16, ECF No. 29-1), they are not indicative of whether in *this* case, Defendants' statements were material such that, as Relator alleges, SBA "would not have awarded the grant" or "approved the application" had it known the statements were false (*id.* ¶¶ 33, 76, 100). Once again, Relator has alleged nothing that would *plausibly* indicate that "the Government would not have awarded the grant money at all but for the purported misrepresentation that the Company was a 'small business concern at least 51 percent owned and controlled by one or more women'" or that the Company would have used the funds for "eligible purposes." (Mar. 2026 Mem. Op. 11-12.) Relator attempts to do so by alleging that "[a]bsent those false certifications, [the Company] would not have received any grant—let alone a $4.7+ million priority grant within days after filing its

RRF application." (Am. Compl. ¶ 136.)[6] This allegation, however, does not "allow the [C]ourt to draw the reasonable inference that [Defendants] [are] liable" for making false, material statements. *Iqbal*, 556 U.S. at 678. Instead, it merely rephrases the same allegations that this Court previously deemed to be insufficient. (*See* Mar. 2026 Mem. Op. 11-12 (citing Compl. ¶ 64 (alleging that "had [Greenwald] not caused [the Company] to repeatedly certify it would use all grant funds for eligible purposes . . . [the Company] would not have received a penny"; *id.* ¶ 84 (alleging that "[a]bsent those false certifications, [the Company] would not have received a penny – let alone a $4.7+ million priority grant within 24 days after filing its RRF application")).) The assertion that the Company would not have received funds under the non-priority, first come, first serve basis is, once again, conclusory.

In any event, as this Court previously explained, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." (*See* Mar. 2026 Mem. Op. 12 (quoting *Escobar*, 579 U.S. at 194).) "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." (*Id.*) The Amended Complaint, therefore, plainly fails to meet the FCA's "demanding" materiality requirement. *Escobar*, 589 U.S. at 178.

[6] The Amended Complaint also alleges that "it is inconceivable that, had the SBA known Greenwald Caterers provided false and misleading information in its RRF application and that Greenwald Caterers would use millions in RRF grant funds to finance real estate investments, the SBA would have awarded Greenwald Caterers a penny." (*Id.* ¶ 100.) This, too, is conclusory.

The Court, accordingly, finds that Relator has failed to adequately plead falsity and/or materiality of the purportedly false statements.[7] Count One of Relator's Amended Complaint is dismissed.

**B. Count Two**

As to Relator's conspiracy claim, Defendants contend that the Amended Complaint fails to state a claim for conspiracy to make false statements against Greenwald because: (1) there is no underlying FCA violation; and (2) the Amended Complaint fails to allege an "agreement between [] Greenwald and anyone other than the company he controls[,]" which is required to plead a conspiracy claim. (Defs.' Moving Br. 30-36.) The Court agrees.

"To state a conspiracy claim under the FCA, a relator must allege[:] (1) 'a conspiracy to get a false or fraudulent claim allowed or paid'[;] and (2) 'an act in furtherance of the conspiracy.'" *Schieber*, 2024 WL 1928357, at *7 (quoting *United States ex rel. Greenfield v. Medco Health Sys., Inc.*, No. 12-522, 2014 WL 4798637, at *11 (D.N.J. Sep. 26, 2014)). "Importantly, an agreement between two or more persons is the 'essence' of a conspiracy under the FCA." *United States ex rel. Laporte v. Premier Educ. Grp., L.P.*, No. 11-3523, 2016 WL 2747195, at *19 (D.N.J. May 11, 2016).

Relator has again failed to allege the existence of any agreement between Greenwald and another individual or entity to defraud the Government. (*See generally* Am. Compl.) Rather, Relator broadly alleges that "Mr. Greenwald, as an individual, agreed and conspired with [the Company] to submit a false and fraudulent RRF application." (*Id.* ¶ 145.) The Court cannot infer an agreement—let alone an act in furtherance of said agreement—from such a boilerplate

[7] Because the Court finds that Relator has failed to adequately allege falsity and/or materiality, it need not reach the causation or knowledge elements of the FCA claim or Defendants' other arguments in favor of dismissal.

allegation, particularly considering there are no facts alleged in the Amended Complaint regarding the agreement.[8] *See Laporte*, 2016 WL 2747195, at *19 (dismissing conspiracy claim where the complaint failed to allege an agreement and "the facts [did] not allow the [c]ourt to infer an agreement between the two because [r]elators have effectively pled that [the companies] are the same entity for all intents and purposes"); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citation omitted)).

The Court, accordingly, dismisses Count Two.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Relator's Complaint is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: October 8, 2026

[8] Without any allegations of the existence of an agreement, the Court need not reach the parties' arguments regarding whether Greenwald, as the sole agent of the Company, can conspire with the Company under the intracorporate conspiracy doctrine. *See Gen Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (Under the intracorporate conspiracy theory, "an entity cannot conspire with one who acts as its agent." (citation omitted)).